UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:23-CV-23057-Scola/Goodman

RYAN DOHMEN, an individual; CHARTER AIR SOLUTIONS, LLC, a Montana company; and GLOBAL CROSSING AIRLINES GROUP, INC., a Delaware corporation,

Plaintiffs,

v.

SHORT'S TRAVEL MANAGEMENT, INC., an Iowa corporation; and STM CHARTERS, INC., an Iowa corporation,

Defendants.

**DEFENDANTS' FIRST AMENDED COUNTERCLAIMS**

Defendants and Counterclaimants Short's Travel Management, Inc. ("Short's Travel") and STM Charters, Inc. ("STM Charters") (collectively, "Defendants and Counterclaimants"), by and through undersigned counsel, by way of Counterclaims against Plaintiffs Ryan Dohmen, Charter Air Solutions, LLC, and Global Crossing Airlines Group, Inc. ("GlobalX") (individually "Plaintiff and Counter-Defendant" and collectively, "Plaintiffs and Counter-Defendants") assert the following:

**INTRODUCTION**

1.    This case is a straightforward matter of a breach of a non-solicitation and confidentiality agreement. Plaintiff and Counter-Defendant Ryan Dohmen is a pilot and former executive who worked for Short's Travel and STM Charters in Iowa and Montana for over 18

1

years.  As part of his employment, Dohmen signed a non-solicitation and confidentiality agreement in which he agreed he would not directly or indirectly solicit any former or current customers, on behalf of himself or anyone else, for a period of 24 months after his termination (the "Agreement"). During his long tenure, Dohmen gained extensive and intimate knowledge of the workings of Short's Travel and STM Charters' business in providing collegiate athletic travel, including the clients, sales methods, contracts, and pricing.  In February 2023, Dohmen resigned, and immediately started two competing businesses, Charter Air Solutions and Top Flight Charters.[1] To grow his new businesses, Dohmen either directly or indirectly, began calling on, communicating, and contracting with Short's Travel and STM Charters clients in contravention of his Agreement.  Relevant here, Dohmen contracted with GlobalX, a new competitor of Short's Travel and STM Charters, to serve as GlobalX's exclusive collegiate charter broker. Notwithstanding Dohmen's Agreement, Dohmen began soliciting Short's Travel and STM Charters' clients on behalf of himself and GlobalX.  Despite being well aware of the Agreement, Plaintiffs and Counter-Defendants believe they can simply ignore the mutually agreed upon provisions of the Agreement to unfairly and improperly compete with Short's Travel and STM Charters.

## PARTIES

2.     Plaintiff and Counter-Defendant Ryan Dohmen is an individual domiciled in Flathead County, Montana.

3.     Plaintiff and Counter-Defendant Charter Air Solutions, LLC is a Montana limited liability company with its principal place of business in Flathead County, Montana. It has no members in states other than Montana.

---

[1] Top Flight Charters was formerly a party to this litigation, but since has been dismissed without prejudice by stipulation. [ECF No. 17.]

4. Plaintiff and Counter-Defendant Global Crossing Airlines Group, Inc., is a Delaware corporation with its principal place of business in Miami-Dade County, Florida.

5. Defendant and Counterclaimant Short's Travel Management, Inc. is an Iowa corporation with a principal place of business in Waterloo, Iowa.

6. Defendant and Counterclaimant STM Charters, Inc. is an Iowa corporation with a principal place of business in Waterloo, Iowa.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because complete diversity of citizenship exists between Plaintiffs and Counter-Defendants and Defendants and Counterclaimants. Moreover, the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court also has jurisdiction over Defendants and Counterclaimants' claims for violation of the Defend Trade Secrets Act ("DTSA").

9. This Court also has supplemental jurisdiction over Defendants and Counterclaimants' state law claims as they are related to the DTSA claims. Moreover, the state law claims, along with the DTSA claim, form part of the same case or controversy.

10. This Court has personal jurisdiction over Plaintiffs and Counter-Defendants as they consented to this Court's jurisdiction by filing the Complaint.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Plaintiff and Counter-Defendant Global Crossing Airlines Group, Inc. has its principal place of business in Miami-Dade County, Florida, and all Plaintiffs and Counter-Defendants consented to this Court's jurisdiction and venue by filing this action.

//

//

## FACTS

A. **Short's Travel Has 77 Years Of Experience In The Sports And Corporate Travel Industry.**

12. Founded in 1946, Short's Travel has 77 years of experience in travel management, and 20 years of experience in team and collegiate travel, servicing hundreds of athletic departments each year. As a travel management company, Short's Travel moves more student athletes than any other travel management company. Short's Travel has been at the forefront of several changes in the travel industry, providing meaningful travel related solutions for sports teams, corporations, executives, entertainment tours, and group and leisure travelers.

13. STM Charters is a subsidiary of Short's Travel, and was formed in 2010 to further Short's Travels goals to ensure privacy, safety, and industry innovation in the air and on the ground. STM Charters fulfills over 1,000 charters annually, moving in excess of 38,000 passengers on aircraft ranging from single engine turboprops to wide body jet airliners that seat over 400 passengers.

B. **Dohmen Agrees To A Non-Solicitation And Confidentiality Agreement, And Gains Extensive Knowledge About Short's Travel's Business Over The Course Of 18 Years.**

14. Short's Travel hired Plaintiff and Counter-Defendant Dohmen in June 2004 as a corporate pilot. In connection with his employment, on June 1, 2004, Dohmen signed the Agreement with Short's Travel. In the Agreement, Dohmen acknowledged that "Employer is in the business of providing complete travel services for business and recreational purposes." [**Ex. 1**.] He also agreed that Short's Travel "has a proprietary interest in its clients and the methods, systems and procedures used for such clients, including any documents and other information regarding the system, sales methods, pricing, bidding and costs, and including, but not limited to the identity of clients, location, system and service requirements, and charges, all of which are regarded as being highly confidential, and constitute trade secrets."

4

15. Dohmen also recognized that during his employment with Short's Travel, he would have access to, and would become familiar with, various trade secrets and confidential information belonging to Short's Travel. Based on this, Dohmen expressly agreed that "for twenty-four (24) months" after his employment with Short's Travel terminates for "any reason," he would not "use, communicate, reveal, or otherwise make available Short Travel's confidential and trade secret information" "for any purpose whatsoever, or to divulge such information to any person, partnership, corporation or entity." [*Id.*, ¶ 2.]

16. Critically, Dohmen promised he would not "directly or indirectly solicit[] any person, company, firm or corporation who is or was a customer of [Short's Travel]" for a period of two years following the termination of his employment.

17. Dohmen went on to work with Short's Travel and STM Charters for over 18 years and held many different positions within the companies. After working for a year as a corporate pilot, Dohmen transitioned to a sales role, and in 2007, became the Director of Regular Season Charters for Short's Travel. As the Director of Regular Season Charters, Dohmen contracted and coordinated non-championship charters for Short's Travel, including brokering charter flights for numerous collegiate teams. In 2012, Dohmen became the President of STM Charters in which he supervised two internal employees focused on brokering and operating charter travel. He was also responsible for building carrier relationships and developing STM Charters' standing in the charter industry. Using confidential information shared and developed during his employment with Short's Travel, Dohmen also developed STM Charters' pricing and cultivated STM Charters' customer relationships in this executive role with STM Charters. Because Short's Travel and STM Charters work so closely together, STM Charters' customers are also considered the customers of Short's Travel. Indeed, once a customer uses any service of either Short's Travel or STM Charters,

all other services are available to that customer.  During his long tenure working at Short's Travel and STM Charters, Dohmen gained close knowledge about the workings of Short's Travel's and STM Charters' business models, sales methods, contracts, customers, and pricing information. Specifically, Dohmen became privy to confidential business information including, (1) who Short's Travel and STM Charters' vendors, carriers, and customers were and the key decision makers, (2) how Short's Travel and STM Charters went about with securing their customers, particularly college sports teams, (3) how Short's Travel and STM Charters set up contracts with these sports teams, (4) how Short's Travel and STM Charters priced and structured their contracts, (5) the pricing and terms behind the contracts, (6) the logistics and strategy behind successfully performing these contracts to charter sports team travel; and (7) information regarding financial resources to secure contracts ("the Confidential Information").

   C. **Dohmen Voluntarily Quits, Subsequently Goes On To Create Two Competing Businesses, And Immediately Begins to Solicit Short's Travel and STM Charters' Customers For His New Businesses.**

   18.    At or around February 3, 2023, Dohmen suddenly quit and provided his two weeks' notice.  Around the time of his resignation, Defendants placed Dohmen on notice of his continuing obligations to Defendants post-termination.  His employment was accordingly terminated on February 17, 2023.  Because Dohmen's employment was terminated on February 17, 2023, he is prohibited from soliciting any person (on behalf of himself or any other person) who is or was a customer of Short's Travel for a period of two-years until at least February 17, 2025.

   19.    After providing his two weeks' notice, but before he was officially terminated, Dohmen began to form competing businesses.

   20.    On February 8, 2023, Dohmen formed Charter Air Solutions.

Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 – (305) 789-8900

21. Despite agreeing to the aforementioned provisions in his Agreement, which prohibits the direct or indirect solicitation of Short's Travel's current or former clients, Dohmen began to immediately call on Short's Travel and STM Charters' customers:

   a. On February 25, 2023, just a week after Dohmen's resignation, Dohmen was in communication with RVR Airlines, LLC (a charter company) and was attempting to broker a deal between a prior customer of Short's Travel and STM Charters, Anthony Travel, LLC (a sports travel management services company and a Short's Travel and STM Charters client), and Hillwood Airways (air charter service company).

   b. Dohmen later went on to broker a deal between RVR Airlines and Anthony Travel. As Anthony Travel had worked with Short's Travel since 2014, Anthony Travel's decision to not renew with Short's Travel resulted in significant loss of gross profit to Short's Travel.

   c. On March 13, 2023, Dohmen then attempted to source a travel trip for the Sam Houston State University Men's Basketball Team—a customer of Short's Travel's entities—on behalf of Charter Air Solutions.

22. Then, on May 30, 2023, Dohmen formed another competing business, Top Flight Charters.

23. A day later, on May 31, 2023, GlobalX issued a press release regarding its venture with Top Flight Charters. [**Ex. 2**.] GlobalX is a domestic, flag, and supplemental charter airline founded in 2019, and like Short's Travel and STM Charters, is also in the business of providing charters for collegiate football, basketball, and baseball teams. The press release also explained that Top Flight Charters "is a team of highly experienced aviation professionals with a specialization in the movement of sports teams," and its "sole focus is supporting college athletics

and as such is structured, staffed and designed with Collegiate customers in mind." [*Id.*]  The press release announced that GlobalX appointed Top Flight Charters, with Dohmen at the helm, as its "exclusive Collegiate Charter Broker for the 2023/2024 season, committing 5 A320s in various configurations, including 2 All VIP 68 seat all business class aircraft." [*Id.*]  Intending to compete in the college sports team travel business, GlobalX stated that, "[w]e believe the Collegiate Air Charter Market is a $500M plus a year business and to effectively participate in this business you need to work with trusted partners. With Ryan Dohmen leading, Top Flight Charters is well positioned to represent GlobalX in this key business segment[.]"  [*Id.*]  Dohmen further stated in the press release that, "[t]here have been several recent changes in the charter industry, and I'm excited about the possibilities that are in front of us. GlobalX has positioned itself to become a leader in the collegiate charter space[.]"  [*Id.*]

24. Immediately and on the same day of the press release, on May 31, 2023, Defendants reached out to GlobalX to inform it that Dohmen was a former employee of Short's Travel and STM Charters, and that Dohmen had a non-solicitation and confidentiality agreement.  GlobalX confirmed that Dohmen was working with Short's Travel and STM Charters' clients by quoting GlobalX through other various brokers.

25. On June 8, 2023, Short's Travel sent Dohmen, Top Flight Charters, and Charter Air Solutions a correspondence reminding Dohmen of his continuing obligations to Short's Travel, namely his non-solicitation and confidentiality obligations.  For the avoidance of any doubt, Short's Travel also provided Dohmen a list of current and former customers of Short's Travel, which would fall within the purview of the Agreement, and to which solicitation would be prohibited.

Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 – (305) 789-8900

26. On June 15, 2023, Dohmen responded to Short's Travel's letter, and provided "reassurances" that neither he nor Charter Air Solutions solicited any current or former customers of Short's Travel. Notably, Dohmen failed to mention or provide any reassurances regarding Top Flight Charters.

27. But these "reassurances" proved to only be false. Despite Dohmen's representations to Short's Travel, Dohmen went on, less than two weeks later to solicit, either directly or indirectly, Short's Travel and STM Charters' clients on behalf of GlobalX:

   d. On or about June 27, 2023, Dohmen provided pricing information on behalf of GlobalX to Short's Travel and STM Charters for chartering Boston College, a client of Short's Travel and STM Charters.

   e. On or about July 20, 2023, Dohmen provided quotes to the University of Connecticut Men's Basketball Team, another client of Short's Travel and STM Charters, on behalf of GlobalX through another broker.

   f. On July 26, 2023, Short's Travel and STM Charters learned that its client, the University of Arkansas was already contracted for the Men's Basketball Season trip to Nassau Community College on GlobalX through Dohmen via Anthony Travel.

28. On July 27, 2023, Short's Travel sent a correspondence to both GlobalX and Dohmen. In the letter to GlobalX, GlobalX was again advised of Dohmen's Agreement with Short's Travel, Dohmen's improper activities related to Short's Travel's clients, and that Dohmen was prohibited from soliciting, either directly or indirectly, Short's Travel's clients. In the letter to Dohmen, Short's Travel reiterated that Dohmen must cease all activities which would violate his Agreement with Short's Travel.

29. Yet the same day, on July 27, 2023, Dohmen requested pricing from Breeze Airways (an airline) for Texas Tech (an existing Short's Travel and STM Charters customer). When Breeze Airways refused to provide pricing, Dohmen, on information and belief, engaged Zo Goodson, another broker, to ask for pricing on Dohmen's behalf. Goodson represented to Breeze Airways that he was a "one man" show; however, Goodson represented to Texas Tech that the flights would be coordinated through Top Flight Charters.

30. Since the filing of the Counter-Claims, Short's Travel and STM Charters are continuing to learn that Top Flight Charters is still working with Short's Travel and STM Charters' clients. For example, on or around October 31, 2023, Short's Travel and STM Charters learned that St. John's University is working with Top Flight Charters through Anthony Travel (also a Short's Travel and STM Charters client) despite the fact that St. John's has worked directly with STM Charters for the past five years.

31. Based on the above, Plaintiffs and Counter-Defendants have clearly indicated that they do not intend to honor the Agreement between Dohmen and Short's Travel. Instead, their activities in soliciting, either directly or indirectly, Short's Travel and STM Charters' customers, and the use of Short's Travel and STM Charters' confidential information, shows their intent to damage Short's Travel and STM Charters, by leveraging Dohmen's knowledge of Short's Travel and STM Charters' business to unfairly compete in the industry.

## COUNT I – BREACH OF CONTRACT

**(Defendant and Counter-Claimant Short's Travel Against Plaintiff and Counter-Defendant Ryan Dohmen)**

32. Paragraphs 1 to 31 are incorporated by reference as if fully set forth herein.

Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 – (305) 789-8900

33. Dohmen entered into the Agreement with Short's Travel as set forth above, in which he agreed that, "Employer is in the business of providing complete travel services for business and recreational purposes." [**Ex. 1**.] He also agreed that Short's Travel "has a proprietary interest in its clients and the methods, systems and procedures used for such clients, including any documents and other information regarding the system, sales methods, pricing, bidding and costs, and including, but not limited to the identity of clients, location, system and service requirements, and charges, all of which are regarded as being highly confidential, and constitute trade secrets." [*Id.*]

34. Dohmen also recognized that during his employment with Short's Travel, he would have access to, and would become familiar with, various trade secrets and confidential information belonging to Short's Travel. Based on this, Dohmen agreed that "for twenty-four (24) months" after his employment with Short's Travel terminates for "any reason," he would not "use, communicate, reveal, or otherwise make available Short Travel's confidential and trade secret information" "for any purpose whatsoever, or to divulge such information to any person, partnership, corporation or entity." [*Id.*, ¶ 2.]

35. Dohmen also agreed he would not "directly or indirectly solicit[] any person, company, firm or corporation who is or was a customer of [Short's Travel]" for a period of two years following his termination of employment.

36. Short's Travel has performed all duties and obligations under the Agreement.

37. Dohmen breached his obligations under the Agreement by soliciting, either directly or indirectly, Short's Travel's current or former customers, and misappropriating Short's Travel's Confidential Information.

38. As a result of Dohmen's breaches, Short's Travel has suffered actual damages.

39. Dohmen's wrongful conduct in breach of his obligations under the Agreement is a substantial factor in causing Short's Travel harm.

40. As a direct and proximate result of Dohmen's breach of the Agreement, Short's Travel has suffered, and will continue to suffer damages, including but not limited to damages reflecting lost business, lost profits, and loss of willful, in an amount to be proven at trial.

41. Short's Travel has also suffered irreparable harm, and will continue to suffer such injury until the breach is permanently enjoined.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS

In Violation Of The Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

(All Defendants and Counter-Claimants Against All Plaintiffs and Counter-Defendants)

42. Paragraphs 1 to 31 are incorporated by reference as if fully set forth herein.

43. At all pertinent times, Short's Travel and STM Charters was in possession of trade secret information, as defined by the DTSA, 18 U.S.C. § 1836 et seq. Such trade secret information includes non-public information of a technical, service, marketing, financial, or other business-type nature, and includes, without limitation, (1) who Short's Travel and STM Charters' vendors, carriers, and customers were and the key decision makers, (2) how Short's Travel and STM Charters went about with securing their customers, particularly college sports teams, (3) how Short's Travel and STM Charters set up contracts with these sports teams, (4) how Short's Travel and STM Charters priced and structured their contracts, (5) the pricing and terms behind the contracts, (6) the logistics and strategy behind successfully performing these contracts to charter sports team travel; and (7) information regarding financial resources to secure contracts ("the Confidential Information").

44. Such Confidential Information constitutes trade secrets of Short's Travel and STM Charters because Short's Travel and STM Charters derives independent economic value from such information, and such information is not generally known nor readily ascertainable by proper means by other persons or entities who can obtain economic value from the disclosure or use of such information, or by Short's Travel and STM Charters' competitors in the industry.

45. Short's Travel and STM Charters have taken reasonable efforts to maintain the secrecy of its trade secrets described above, including requiring employees to sign the Confidentiality and Noncompetition Agreement, as set forth above.

46. By virtue of his position with and responsibilities to Short's Travel and STM Charters, Dohmen had access to Short's Travel and STM Charters' valuable trade secret information, as set forth above.

47. Upon information and belief, Dohmen has provided Short's Travel and STM Charters trade secret information to Charter Air Solutions, Top Flight Charters, and GlobalX, and otherwise used it for Charter Air Solutions, Top Flight Charters, and GlobalX's benefit.

48. Upon information and belief, at all pertinent times, Charter Air Solutions, Top Flight Charters, and GlobalX have been aware of, and authorized or ratified, Dohmen's wrongful conduct with respect to Short's Travel and STM Charters' trade secret information.

49. Upon information and belief, Plaintiffs and Counter-Defendants have actually misappropriated Short's Travel and STM Charters' trade secret information.

50. Plaintiffs and Counter-Defendants have utilized such information to Short's Travel and STM Charters' disadvantage, including to improperly solicit Short's Travel and STM Charters' current customers and to funnel business opportunities away from Short's Travel and STM Charters.

51. Upon information and belief, the utilization of Short's Travel and STM Charters' trade secrets will continue, which creates a substantial risk of harm to Short's Travel and STM Charters, including the potential loss of customers, business opportunities, its competitive advantages, and its trade secrets and goodwill, in amounts of actual damages recoverable pursuant to 18 U.S.C. § 1836(b)(3)(B)(i) and that are difficult to ascertain unless Plaintiffs and Counter-Defendants are enjoined through injunctive relief as available under 18 U.S.C. § 1836(b)(3)(A).

52. In misappropriating Short's Travel and STM Charters' trade secrets and in posing a substantial threat to misappropriate additional trade secrets, Plaintiffs and Counter-Defendants actions have been willful and malicious. As such, pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D), Short's Travel and STM Charters is entitled to an award of exemplary damages and attorneys' fees.

**COUNT III – MISAPPROPRIATION OF TRADE SECRETS**

**In Violation Of the Montana Uniform Trade Secrets Act**

**(All Defendants and Counter-Claimants Against All Plaintiffs and Counter-Defendants)**

53. Paragraphs 1 to 31 are incorporated by reference as if fully set forth herein.

54. At all pertinent times, Short's Travel and STM Charters was in possession of trade secret information, as defined by the Montana Uniform Trade Secrets Act, Mont. Code Ann. § 30-14-402(4). Such trade secret information includes non-public information of a technical, service, marketing, financial, or other business-type nature, and includes, without limitation, (1) who Short's Travel and STM Charters' vendors, carriers, and customers were and the key decision makers, (2) how Short's Travel and STM Charters went about with securing their customers, particularly college sports teams, (3) how Short's Travel and STM Charters set up contracts with these sports teams, (4) how Short's Travel and STM Charters priced and structured their contracts,

(5) the pricing and terms behind the contracts, (6) the logistics and strategy behind successfully performing these contracts to charter sports team travel; and (7) information regarding financial resources to secure contracts ("the Confidential Information").

55. Such Confidential Information constitutes trade secrets of Short's Travel and STM Charters because Short's Travel and STM Charters derives independent economic value from such information, and such information is not generally known nor readily ascertainable by proper means by other persons or entities who can obtain economic value from the disclosure or use of such information, or by Short's Travel and STM Charters' competitors in the industry.

56. Short's Travel and STM Charters have taken reasonable efforts to maintain the secrecy of its trade secrets described above, including but not limited to requiring employees to sign the Confidentiality and Noncompetition Agreement, as set forth above.

57. By virtue of his position with and responsibilities to Short's Travel and STM Charters, Dohmen had access to Short's Travel and STM Charters' valuable trade secret information, as set forth above.

58. Upon information and belief, Dohmen has provided Short's Travel and STM Charters trade secret information to Charter Air Solutions, Top Flight Charters, and GlobalX, and otherwise used it for Charter Air Solutions, Top Flight Charters, and GlobalX's benefit.

59. Upon information and belief, at all pertinent times, Charter Air Solutions, Top Flight Charters, and GlobalX have been aware of, and authorized or ratified, Dohmen's wrongful conduct with respect to Short's Travel and STM Charters' trade secret information.

60. Upon information and belief, Plaintiffs and Counter-Defendants have actually misappropriated Short's Travel and STM Charters' trade secret information.

61. Plaintiffs and Counter-Defendants have utilized such information to Short's Travel and STM Charters' disadvantage, including to improperly solicit Short's Travel and STM Charters' current customers and to funnel business opportunities away from Short's Travel and STM Charters.

62. Upon information and belief, the utilization of Short's Travel and STM Charters' trade secrets will continue, which creates a substantial risk of harm to Short's Travel and STM Charters, including the potential loss of customers, business opportunities, its competitive advantages, and its trade secrets and goodwill, in amounts of actual damages recoverable pursuant to Mont. Code Ann. § 30-14-404(1) and that are difficult to ascertain unless Plaintiffs and Counter-Defendants are enjoined through injunctive relief as available under Mont. Code Ann. § 30-14-403.

63. In misappropriating Short's Travel and STM Charters' trade secrets and in posing a substantial threat to misappropriate additional trade secrets, Plaintiffs and Counter-Defendants actions have been willful and malicious. As such, pursuant to Mont. Code Ann. § 30-14-404(2), Short's Travel and STM Charters is entitled to an award of exemplary damages and attorneys' fees.

## COUNT IV– INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Defendant and Counter-Claimant Short's Travel Against GlobalX and Charter Air Solutions)

64. Paragraphs 1 to 31 are incorporated by reference as if fully set forth herein.

65. Short's Travel and Dohmen entered into a contract—namely, the Agreement. GlobalX, Top Flight Charter, and Charter Air Solutions were aware, or became aware of this contractual relationship.

66. GlobalX and Charter Air Solutions intentionally and knowingly disrupted and interfered with Short's Travel's contractual relationship with Dohmen under the Agreement and knew that their conduct was certain or substantially certain to disrupt Dohmen's performance of the contract.

67. GlobalX and Charter Air Solutions' unlawful acts included misappropriating Short's Travel's trade secrets and aiding and abetting Dohmen's unlawful acts.

68. GlobalX and Charter Air Solutions' conduct is a substantial factor in causing Short's Travel harm.

69. As a direct and proximate result of the above-described conduct, Short's Travel has suffered and will further suffer damages, including but not limited to damages reflecting lost business, lost profits, and loss of goodwill, in amounts to be proven at trial.

70. Short's Travel has also suffered irreparable harm, and will continue to suffer such injury until the breaches are permanently enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants and Counterclaimants pray as follows:

1. That Plaintiffs and Counter-Defendants' claims be dismissed with prejudice and that judgment be entered in favor of Defendants and Counterclaimants;

2. That Plaintiffs and Counter-Defendants take nothing by way of the Complaint;

3. That Plaintiffs and Counter-Defendants be restrained and enjoined from using any of Defendants and Counterclaimants' trade secret and confidential information;

4. That Plaintiffs and Counter-Defendants be restrained and enjoined from directly or indirectly soliciting or attempting to solicit any of Short's Travel's customers, or assist anyone else in doing so;

5. That Defendants and Counterclaimants be awarded compensatory, incidental, and

consequential damages, in an amount to be determined at trial;

      6.      That Defendants and Counterclaimants be awarded their costs of suit and attorneys' fees incurred in defense of this action; and

      7.      For such other and further relief as the Court deems just and proper.

Dated this 8th day of November, 2023.

                                     Respectfully submitted,

                                      BAKER & McKENZIE LLP
                                      Sabadell Financial Center
                                      1111 Brickell Avenue, 10th Floor
                                      Miami, Florida 33131
                                      Telephone: + 1 305 789 8900
                                      Facsimile:  +1 305 789 8953

                 By:   */s/ Annasofia A. Roig*
                                      Annasofia A. Roig, Esq.
                                      Florida Bar No. 1018149
                                      annasofia.roig@bakermckenzie.com

                                      Kimberly F. Rich (*pro hac vice*)
                                      kimberly.rich@bakermckenzie.com
                                      1900 N. Pearl Street, Suite 1500
                                      Dallas, TX  75201
                                      Tel.: +1 214 978 3000
                                      Fax: +1 214 978 3099

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Annasofia A. Roig*
Annasofia A. Roig