**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

RYAN DOHMEN; CHARTER AIR
SOLUTIONS, LLC; and GLOBAL
CROSSING AIRLINES GROUP,
INC.,                                             **CASE NO.: 1:23-cv-23057-Scola/Goodman**

 *Plaintiffs/Counter-Defendants,*

v.

SHORT'S TRAVEL MANAGEMENT,
INC.; and STM CHARTERS, INC.,

 *Defendants/Counter-Plaintiffs.*

_____/

<u>**COUNTER-DEFENDANT RYAN DOHMEN'S ANSWER, AFFIRMATIVE DEFENSES,
AND DEMAND FOR JURY TRIAL**</u>[1, 2]

 Plaintiff/Counter-Defendant Ryan Dohmen, through the undersigned counsel, hereby serves his Answer, Affirmative Defenses, and Demand for Jury Trial in response to the Counterclaim:

**I.** <u>**ANSWER**</u>

**INTRODUCTION**

 1. Denied.

**PARTIES**

 2. Admitted.

 3. Denied.

---

[1] **"Counter-Defendant"** means Ryan Dohmen (**"Dohmen"**). Charter Air Solutions, LLC is **"Charter Air Solutions"**, and Global Crossing Airlines Group, Inc. **"GlobalX"**. **"Counterclaimants"** means collectively Short's Travel Management Inc. (**"Short's Travel"**) and STM Charters, Inc. (**"STM-Charters"**).

[2] The headings contained in the Answer section of this filing mirror those contained in Defendant's First Amended Counterclaim (D.E. 18) (the "Counterclaim"). To the extent any such headings contain allegations, they are denied.

4.      Admitted.

5.      Admitted.

6.      Admitted.

## JURISDICTION AND VENUE

7.      Admitted for jurisdictional purposes. All remaining allegations are denied.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

## FACTS

12.     Counter-Defendant is without knowledge as to whether Short's Travel "moves more student athletes than any other travel management company" therefore denied. All remaining allegations in this paragraph are denied.

13.     Denied.

14.     Admitted that Dohmen was hired by Short's Travel in June 2004 as a pilot and that he signed Exhibit 1. Aver that Exhibit 1 speaks for itself.

15.     Denied. Aver that Exhibit 1 speaks for itself.

16.     Denied. Aver that Exhibit 1 speaks for itself.

17.     Admitted that Dohmen held numerous positions with Counterclaimants and that he became President of STM Charters in 2012. All remaining allegations are denied.

18.     Denied.

19.     Denied.

20.     Admitted.

21.     Denied.

22.     Denied.

23.     Admitted. Aver that Exhibit 2 speaks for itself.

24.     Denied.

25.     Denied. Aver that any correspondence speaks for itself.

26.     Denied. Aver that any correspondence speaks for itself.

27.     Denied.

28.     Denied. Aver that any correspondence speaks for itself.

29.     Denied.

30.     Denied.

31.     Denied. Aver that the contract at-issue (Exhibit 1) is illegal and therefore unenforceable.

### COUNT I – BREACH OF CONTRACT
#### (Short's Travel against Dohmen)

32.     Dohmen incorporates and realleges paragraphs 1-31 as if set forth fully herein.

33.     Denied. Aver that Exhibit. Speaks for itself.

34.     Denied. Aver that Exhibit. Speaks for itself.

35.     Denied. Aver that Exhibit. Speaks for itself.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

3

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### VIOLATION OF THE DEFEND TRADE SECRETS ACT
#### (Counterclaimants against All Counter-Defendants)

42. Dohmen incorporates and realleges paragraphs 1-31 as if set forth fully herein.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

### COUNT III – MISAPPROPRIATION OF TRADE SECRETS
### VIOLATION OF THE MONTANA UNIFORM TRADE SECRETS ACT
#### (Counterclaimants against all Counter-Defendants)

53. Dohmen incorporates and realleges paragraphs 1-31 as if set forth fully herein.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61.     Denied.

62.     Denied.

63.     Denied.

### COUNT IV – INTERFERENCE WITH CONTRACTUAL RELATION
**((Defendant and Counterclaimant Short's Travel Against GlobalX and Charter Air Solutions)**

64.     Dohmen incorporates and realleges paragraphs 1-31 as if set forth fully herein.

65.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

66.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

67.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

68.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

69.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

70.     This Count is not directed towards Dohmen and does not require an answer. To the extent a response is required, this paragraph is denied.

### PRAYER FOR RELIEF

Counterclaimants' Prayer for Relief, and all of its subparts, are denied.

## II.    AFFIRMATIVE DEFENSES

### First Affirmative Defense
### Illegality

Counterclaimants' claims are barred, in whole or in part, by the affirmative defense of illegality. The restrictive covenants at issue constitute unlawful restraints of trade because Counterclaimants lacks any legitimate business interest to support their enforcement. *See IDMWORKS, LLC v. Pophaly*, 192 F.Supp.3d 1335, 1340-41 (S.D. Fla. 2016) (stating that "legitimate business interests" generally take the form of trade secrets, substantial customer relationships, customer good will, or extraordinary training); *see also Moore Business Forms, Inc. v. Wilson*, 953 F.Supp. 1056, 1064 (N.D. Iowa 1996).

Counterclaimants do not possess any legitimate business interest because: (1) there is no confidential or proprietary information at issue that is valuable and unique to Counterclaimants, let alone that which could be used to unfairly compete; (2) Counterclaimants did not provide extraordinary or specialized training to Dohmen; (3) there are no substantial, legally protectable relationships at issue; and (4) no other legitimate business interests exist to justify enforcement of the competitive restrictions at issue. There is no way Dohmen could use any information learned during his affiliation with Counterclaimants to "unfairly compete" against it. *See White v. Mederi Caretenders Visiting Servs. of Fla.*, LLC, 226 So.3d 774, 784-85 (Fla. 2017) (defining a "legitimate business interest" as "a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner"). Instead, we are talking about fair competition in an open market.

Counterclaimants' position regarding confidentiality requires considerable scrutiny, as in order for confidential or proprietary information to constitute a legitimate business interest, that information must be valuable, unique, not available to other competitors in the industry, and of the

sort that would allow for unfair competition. *See Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000) (information commonly known in the industry and not unique to the company does not constitute a protectable interest); *Lucky Cousins Trucking v. QC Energy*, 223 F. Supp. 3d 1221 (M.D. Fla. 2016). Here, we are talking about schools—the vast majority of which are public and therefore uniquely open to competitors. Even if any information at issue (a) could be construed as a trade secret or confidential information belonging to Counterclaimants (which it cannot and does not) and (b) is demonstrated to be in Dohmen's possession (which is not), Counterclaimants are required to demonstrate that Dohmen could use that exact information to gain an unfair advantage in the relevant market. *See, e.g., Passalacqua v. Naviant, Inc*., 844 So. 2d 792, 796 (Fla. 4th DCA 2003) (no legitimate business interest in confidential information where plaintiff failed to articulate how its methods were unique and how defendant could use that information against her in market to gain unfair advantage). Things are further complicated because in Dohmen's current competition, he has access to jets (rather than needing to procure them from third parties as Counterclaimants must).

With respect to customer relationships, it appears that it must be said: not all relationships are protectable. That is not how the free market works. Here, it is not in dispute that universities frequently utilize numerous air charter services within the same school year (and at times for the same athletic team within the same school year). It is unreasonable to suggest that Counterclaimants have a protectable relationship with these entities. Their decision makers are easily identifiable by anyone with an internet connection. They are free to do business with whomever they want. By their very nature (again, primarily public institutions), they are entitled to seek the best price they can receive—which is both why the business is primarily bid based and why Counterclaimants attempts to stifle market competition is injurious to the public. The reality

is, Counterclaimants are not in the business of providing planes. They are in the business of finding planes. Dohmen does not receive an unfair advantage simply because he is now affiliated with those that *do* and *can* provide aircraft.

### Second Affirmative Defense
#### Competition Privilege

Counterclaimants' claims are barred, in whole or in part, by the doctrine of competition privilege. Any claims based on Dohmen's competition fail because his conduct in that respect is privileged. To the extent that Dohmen competes with Counterclaimants, he has never utilized improper means to do so. Nor has his conduct otherwise restrained competition. He has simply advanced his competitive interests in the market. Any claims based on his competition fail because such competition is entirely privileged. *Audiology Distr., LLC v. Simmons*, 2014 WL 7672536, at *11 (M.D. Fla. May 27, 2014); *Se. Title Guar. Corp. of Baltimore v. McDill Columbus Corp.,* 543 So. 2d 853, 855 (Fla. 2d DCA 1989); *see also Holdsworth v. Nissly*, 520 N.W.2d 332, 336 (Iowa Ct. App. 1994) ("Conduct is generally not considered improper if it is fair and reasonable under the circumstances and done for a legitimate business purpose.").

### Third Affirmative Defense
#### Waiver

Counterclaimants' claims are barred by the doctrine of waiver. Counterclaimants waived their ability to seek relief for any use of their allegedly confidential, proprietary, or trade secret information by their disclosures as they have repeatedly sought to procure aircraft from Dohmen's new employer and have repeatedly had their agents solicit Dohmen directly for business. Further, Counterclaimants openly advertise the specific identities of their customer base. *See Raymond James Fin. Servs., Inc. v. Saludakas*, 896 So. 2d 707, 711 (Fla. 2005); *Bueno v. Workman*, 20 So.

3d 993, 998 (Fla. 4th DCA 2009); *Continental Cas. Co. v. G. R. Kinney Co.*, 258 Iowa 658, 660 (Iowa 1966).

### Fourth Affirmative Defense
**Laches**

Counterclaimants' claims are barred by the doctrine of laches. Counterclaimants allege that Dohmen began competing in February 2023. Counterclaimants learned of Dohmen's allegedly improper competition no later than May 31, 2023. D.E. 18 at ¶ 24. Despite this, Counterclaimants never pursued legal action. They instead countersued more than four months later only after being sued by Plaintiffs in this action. *See* D.E. 12. Counterclaimants' delay was unreasonable and mitigates against any form of injunctive relief. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F.Supp.3d 1368, 1374 (S.D. Fla. 2014); *see also Moser v. Thorp Sales Corp.*, 256 N.W.2d 900, 908 (Iowa 1977).

### Fifth Affirmative Defense
**Prior Breach**

Counterclaimants' claims are barred, in whole or in part, by Short's Travel's prior breach of the at-issue non-compete agreement. *See* D.E. 18-1. Short's Travel unilaterally changed Dohmen's job title, role, responsibility, and failed to pay him commission that it owed him for the year 2022. Employee compensation is the *sine qua non* of an employment relationship, the fundamental consideration of any employment agreement. Failure to pay Dohmen constitutes a breach of the at-issue agreement. *See, e.g., N. Tr. Invs., N.A. v. Domino*, 896 So. 2d 880, 882 (Fla 4th DCA 2005) ("Having committed the first breach, the general rule is that a material breach of [an agreement] allows the no-breaching party to treat the breach as a discharge of his contract liability . . . If the employer wrongfully refuses to pay the employee his compensation, the

employee is relieved for any further obligation under the contract[.]") (quotations omitted); *Direct Mail Holding, LLC v. Bush*, 2012 WL 1344823, at *5 (M.D. Fla. Mar. 8, 2012) ("A party may be excused from its obligations under a contract by a material, antecedent breach of another party … More specifically, an employee is relieved of his or her obligation under a noncompetition agreement if the employer unilaterally denies compensation owed to the employee.") (internal citations omitted); *see also Van Oort Constr. Co., Inc. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 692 (Iowa 1999).

### Sixth Affirmative Defense
### Unclean Hands

Counterclaimants' claims are barred, in whole or in part, by the doctrine of unclean hands. A party is not entitled to equitable relief when it comes to court with unclean hands. *See Manhattan Med. Co. v. Wood*, 108 U.S. 218, 225 (1883) ("[H]e who seeks equity must present himself to the court with clean hands."); *Pilafian v. Cherry*, 355 So. 2d 847, 849 (Fla. 3d DCA 1978 (same). Counterclaimants have engaged in wrongful conduct, including but not limited to: (a) refusing to pay him money that he was owed, (b) decreasing Dohmen's overall compensation, (c) using funds owed to Dohmen as leverage in an attempt to have him sign a far more extensive noncompete than the one he had signed nearly 20 years earlier, (d) unilaterally changing Dohmen's job description, duties, and responsibilities (and misrepresenting the nature of such changes in discussions with Dohmen), (e) defaming Dohmen in the marketplace, and (f) misrepresenting the enforceability of the at-issue restrictions to numerous market actors, including GlobalX.

This conduct precludes equitable relief. S*ee Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*, 2012 WL 5398625, at *17 (S.D. Fla. Nov. 2, 2012), *aff'd sub nom. Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC, Risk Retention Grp.*, 522 Fed. Appx. 696 (11th Cir. 2013) (reasoning that unclean hands applies when one acts in bad faith, resorts to trickery and deception,

or has been guilty of fraud, injustice, or unfairness even if the wrongdoing may have been within the law, as long as the wrongdoing is generally connected with the mater in litigation an affects the adverse party).

**<u>Seventh Affirmative Defense</u>**
**Failure to Mitigate**

Counterclaimants' claims are barred, in whole or in part by their failure to mitigate damages.  To the extent that any of the at-issue information actually (1) constitutes confidential, proprietary, or trade secret information or (2) was in the possession of Dohmen after his employment with Counterclaimants, Counterclaimants failed to take reasonable measures to keep such information a secret or otherwise protect themselves from Dohmen's allegedly unlawful competition. *See, e.g., Frederick v. Tankships, Inc*., 205 F.3d 1277, 1286 (11th Cir. 2000). The same can be said for any allegedly protectable relationships, goodwill, or any other supposed legitimate business interest. Among other things, Counterclaimants have repeatedly sought to procure aircraft from Dohmen's new employer and have repeatedly had their agents solicit Dohmen directly for business. Further, Counterclaimants openly advertise the specific identities of their customer base—customers that they do not have exclusive deals with. Given these realities, Counterclaimants have failed to mitigate damages they claim to have incurred.

**<u>Eighth Affirmative Defense</u>**
**Equitable Estoppel**

Counterclaimants' claims are barred, in whole or in part, by the doctrine of equitable estoppel.  Counterclaimants have claimed that they are entitled to injunctive relief (and, it follows, face irreparable harm) due to Dohmen's competition. Dohmen has relied on such representations by curbing his competition. In reality, Counterclaimants simply seek to curb his *fair* market competition, as is evidenced by the fact that they continue to solicit him and those affiliated with

11

him for business. Additionally, Counterclaimants misrepresented both Dohmen's compensation structure and job duties in the fall of 2022. Dohmen continued working (to his detriment) with Counterclaimants based due to these false representations. As a result, Counterclaimants are equitably estopped from some or all of the remedies they seek. *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004); *Richards v. Dodge*, 150 So. 2d 477, 481 (Fla. 2d DCA 1963); *see also City of Akron v. Akron Westfield Cmty. School Dist.*, 659 N.W.2d 223, 226 (Iowa 2003).

### III.    DEMAND FOR ATTORNEYS' FEES

Dohmen demands an award of his attorneys' fees and costs incurred during the course of this litigation to the fullest extent permitted by law.

### IV.    JURY TRIAL DEMAND

Dohmen demands a trial by jury on all issues so triable.

### V.    DEMAND FOR JUDGMENT

Dohmen demands judgment be entered in his favor on all claims and affirmative defenses, as well as all other relief the Court deems just and proper.

Dated: November 22, 2023                    Respectfully submitted,

By*: /s/ Christopher S. Prater*
Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33031
Telephone: (954) 332-2380
*Attorneys for Plaintiffs/Counter-Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 22nd day of November, 2023, the foregoing document

was furnished via CM/ECF to all counsel of record.

By: *<u>/s/ Christopher S. Prater</u>*
Christopher S. Prater