United States District Court

for the
Southern District of Florida

| | |
|---|---|
| Ryan Dohmen, and others,<br>Plaintiffs,<br><br>v.<br><br>Short's Travel Management, Inc.,<br>and STM Charters, Inc.,<br>Defendants. | )<br>)<br>)<br>) Civil Action No. 23-23057-Civ-Scola<br>)<br>)<br>)<br>) |

**Order on Motion to Dismiss Count 4 of the Amended Counterclaim**

This matter is before the Court on the Plaintiffs'/Counter-Defendants' motion to dismiss count 4 of the Defendants' counterclaim. (ECF No. 27.) The Defendants have responded (ECF No. 30), and the Plaintiffs/Counter-Defendants have not filed a reply. After review of the briefing, the record, and the relevant legal authorities, the Court **denies the motion**. (**ECF No. 27**.)

**1. Background**

This action centers around a dispute between Plaintiff Ryan Dohmen and his former employers, the related entities Short's Travel Management, Inc. and STM Charters, Inc. Ryan Dohmen worked at Short's Travel Management from 2004 to 2023 in various capacities, including as president of STM Charters. (Countercl., ECF No. 18 ¶¶ 14, 18.) At the time of his hiring, Dohmen signed a confidentiality and non-competition agreement in which he agreed not to disclose STM's confidential information and trade secrets or to solicit STM customers for two years following the termination of his employment. (*Id.* ¶¶ 15-16.) But according to the counterclaim, that is exactly what Dohmen did following his resignation in early 2023, including by forming a competitor company (Top Flight Charters) and beginning a venture with Global Crossing Airlines Group ("GlobalX"), a charter airline, both of whom are Plaintiffs/Counter-Defendants along with Dohmen. The Defendants/Counter-Plaintiffs claim that Dohmen also solicited STM customers, using STM's confidential information and trade secrets in the process. Specifically, the counterclaim alleges 4 counts: 1) breach of contract; 2) misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act; 3) misappropriation of trade secrets in violation of the Montana Uniform Trade Secrets Act, and 4) interference with contractual relations. (*Id.* ¶¶ 32-70.) Only

the fourth is the subject of the motion to dismiss. (Mot. to Dismiss, ECF No. 27.)

### 2. Legal Standard

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Bank of Am., N.A. v. GREC Homes IX, LLC*, No. 13-21718-CIV, 2014 WL 351962, at *3-4 (S.D. Fla. Jan. 23, 2014) (Altonaga, J.) (cleaned up). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

The Plaintiffs/Counter-Defendants have moved to dismiss count 4 of the counterclaim, which is interference with contractual relations by Short's Travel against GlobalX and Charter Air Solutions. Count 4 alleges that "GlobalX and Charter Air Solutions intentionally and knowingly disrupted and interfered with Short's Travel's contractual relationship with Dohmen under the Agreement and knew that their conduct was certain or substantially certain to disrupt Dohmen's performance of the contract." (Countercl., ECF No. 18 ¶ 66.) This conduct included "unlawful acts includ[ing] misappropriating Short's Travel's trade secrets and aiding and abetting Dohmen's unlawful acts." (*Id.* ¶ 67.)

The Counter-Defendants argue in the motion that count 4 must be dismissed because it is preempted by the Montana Uniform Trade Secret Act ("MUTSA"). The MUTSA reads:

"(1) Except as provided in subsection (2), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
  (2) This part does not affect:
    (a) contractual remedies, whether or not based upon misappropriation of a trade secret; or
    (b) other civil remedies that are not based upon misappropriation of a trade secret . . . ." MONT. CODE ANN. § 30-14-408.

According to the Counter-Defendants, because the MUTSA "displaces conflicting tort" claims, count 4 cannot survive as an independent claim. They argue that count 4 is based on the same allegations as count 3, the MUTSA claim: that the Counter-Plaintiffs "have trade secrets and [Counter-Defendants] have misappropriated them through their work with Dohmen." (Mot., ECF No. 27 at 3.) Therefore, count 4 of the counterclaim cannot survive.

The Counterclaimants respond that count 4 of the counterclaim is not preempted because count 4 does not solely rely on allegations of trade secret misappropriation but on aiding and abetting Dohmen's breach of contract, and that the issue of preemption is premature. (*See generally* Resp., ECF No. 30.) The Court agrees.

The MUTSA expressly excludes "other civil remedies that are not based upon misappropriation of a trade secret" from preemption. *See* MONT. CODE ANN. § 30-14-408(2)(b). While thin, the Counter-Plaintiffs' interference-with-a-contractual-relationship allegations cover a wider scope than only

misappropriation of a trade secret. When construing them in the light most favorable to the Counter-Plaintiffs, as the Court must do when considering a motion to dismiss, the allegations include interference with the contract beyond violation of the terms relevant to trade secrets. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Rather, the Counter-Plaintiffs allege more generally that GlobalX and Charter Air "disrupted and interfered with Short's Travel's contractual relationship with Dohmen," which included obligations unrelated to trade secrets such as non-solicitation. (Countercl., ECF No. 18 ¶ 14, 66.) The Court cannot conclude based on these allegations that the MUTSA preempts count 4 of the counterclaim.

And, as the Counter-Plaintiffs note, there has been no determination at this stage that the information Dohmen allegedly shared constituted trade secrets rather than confidential information. (*See* Resp., ECF No. 30 at 6.) If the information does not rise to the level of trade secret, the MUTSA would not apply at all. The Court therefore disagrees with the Counter-Defendants that claim 4 of the counterclaim is preempted by the MUTSA and must be dismissed.

### 4. Conclusion

For the above reasons, the motion to dismiss count 4 of the counterclaim is **denied**. (**ECF No. 27**.)

**Done and ordered** in Miami, Florida, on January 15, 2024.

_____
Robert N. Scola, Jr.
United States District Judge